UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

LUZ CASTRO-MENDRÉ,

    Plaintiff,

v.

HUMANA HEALTH PLANS OF PUERTO RICO, et. al.,

    Defendants.

Civil No. 12-1946 (JAF)

## **OPINION AND ORDER**

We must decide whether an employee's evidence of discrimination is sufficient to withstand her employer's motion for summary judgment in this discrimination case.

### I.

### **Background**

Because we must view all facts in the light most favorable to the non-moving party when considering a summary judgment motion, to the extent that any facts are disputed, the facts set forth below represent the plaintiff's version of the events. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, where the plaintiff's asserted facts do not properly comply with Local Rule 56(c) and (e), we deem the defendants' properly-supported statements as admitted. See Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004) (affirming district court's decision to deem moving party's statements of facts admitted if opposing party fails to controvert properly).

The story behind this case begins in 2009, when Luz Castro-Mendré, a physician contracting representative in Humana's Providers Network & Contracting Department, started a friendship with a co-worker, Alberto López. In the course of their friendship, Castro-Mendré and López conversed over the phone at work about personal matters and exchanged non-work-related emails signed with salutations like "muah" and "kisses." Around that time, López sent Castro-Mendré three separate emails, each containing a picture: Two of his penis and one of him standing naked in front of a mirror. Castro-Mendré did not delete the pictures, but saved them in a separate file on her computer. The precise nature of their relationship at this time is disputed: López claims that he sent the pictures to Castro-Mendré after she requested them.

Whatever its precise nature, the relationship turned sour in late 2010, following López's promotion to a supervisory role. While López continued greeting Castro-Mendré with a kiss and still sent emails asking Castro-Mendré to affirm that "he looked good," Castro-Mendré maintains that after his promotion, López's attitude toward her changed. According to her, López became imperious and sometimes threatened to dismiss her from her position. He began correcting trivial aspects of her behavior, like insisting that she change the name on her business cards from "Lucy" to "Luz" because, in his estimation, the former was unprofessional. López even wrongly accused Castro-Mendré of canceling an existing agreement with a medical provider. Their strained working relationship made it more difficult for Castro-Mendré to do her job.

In February of 2011, Castro-Mendré filed an internal complaint with Vilma Benítez, a Humana Human Resources employee. Benítez and Arleen Marrero, the Vice-President of the Providers Network and Contracting Department, subsequently initiated an investigation. They interviewed Castro-Mendré about the issues raised in her

complaint, including the pictures that López sent by email, López's insistence on workplace greetings that involved a kiss, and allegations of inappropriate jokes and conversation among the employees supervised by López. Before Benítez and Marrero completed their investigation, López resigned. Humana contracted with an outside consultant firm to conduct a review of the work environment and employee behavior within the Providers Network and Contracting Department. The consulting firm found several violations of Humana's Harassment and Critical Offenses policy, leading to the disciplining of eleven employees, including Castro-Mendré.

Following López's resignation, Yanira Ramírez took over the supervision of the physician contracting representatives, including Castro-Mendré. Shortly thereafter, Ramírez joined Castro-Mendré on several field visits to provider offices. As part of her employment, Castro-Mendré visited and inspected facilities of medical providers needing to renew their credentials with Humana. After every visit and inspection, Castro-Mendré was required to submit and fill out an evaluation form. The form had to be signed by a person familiar with the facility and who was physically present when the inspection was carried out. Ramírez would later note in a written warning that Castro-Mendré did not coordinate her visits to providers in advance and that a majority of the providers visited did not seem to know Castro-Mendré. Later, Ramírez notified all physician contracting representatives that internal agendas were not updated properly and a failure to update would result in a written warning. Castro-Mendré failed to update her agenda and received a written warning. In early 2012, Ramírez again warned Castro-Mendré over her non-compliance with office protocol, including not coming prepared for a face-to-face meeting; providing incomplete paperwork from providers despite reporting that the paperwork was complete; and incorrectly submitting meeting agendas.

In April 2012, Castro-Mendré's new supervisor, David Umpierre, received information from Humana's Credentialing Department regarding apparent irregularities in documents submitted by Castro-Mendré. A clerk with the Credentialing Department noticed that the signature on a facility evaluation form for the office of medical provider José Ferrero Chapero was signed by an office representative, "Loyda Hernández." Dr. Ferrero-Chapero's office did not employ anyone by that name. This irregularity led Umpierre to begin an investigation into Castro-Mendré's work product. As part of their investigation, Umpierre and Ramírez visited doctors and their staff to verify whether the information submitted by Castro-Mendré was accurate and correct.

Umpierre and Ramírez recorded a laundry list of violations. Castro-Mendré falsely represented that she had visited certain medical providers—obtaining signatures from people who were either not employed at the facility or had not actually been present for Castro-Mendré's scheduled site visit. Castro-Mendré had also obtained signatures on facility evaluation forms without conducting a site visit or facility inspection as required by Humana policy.

Humana concluded that Castro-Mendré's actions were a clear violation of the company's "Critical Offenses Policy"—a policy requiring the immediate termination of employment for, among other things, behavior detrimental to customer service or Humana operations and deliberate or negligent omission or falsification of significant information on an application, time report, expense statement, facility record, benefit form, or other forms. On May 29, 2012, upon the recommendation of Umpierre and Ramírez, and in consultation with Humana's Human Resources Department and legal counsel, Castro-Mendré's employment was terminated.

On July 7, 2011, Castro-Mendré filed a charge for sex discrimination and retaliation with the Equal Employment Opportunity Commission. On August 31, 2012, Castro-Mendré voluntarily dismissed the charge with the EEOC. The charge was subsequently dismissed with prejudice. On October 4, 2012, she filed anew with the EEOC. On November 19, 2012, she filed this lawsuit against Humana Health Plans of Puerto Rico. She claims she was subjected to (1) sexual harassment that created a hostile work environment under federal law, and (2) retaliatory termination for complaining about that harassment under federal and Commonwealth law. (Docket No. 23.) The defendants moved for summary judgment. (Docket No. 62.)

## II.

## Legal Standard

The defendants are entitled to summary judgment on a claim if they can show that there is no genuine dispute over the material facts underlying the claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). We must decide whether a reasonable juror could find for the plaintiff on each of her claims when all reasonable inferences from the evidence are drawn in her favor. See Scott v. Harris, 550 U.S. 372, 380 (2007).

## III.

## Discussion

### A. Sexual Harassment

Under Title VII, judicial recourse is not a remedy of first resort. Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir. 2003). An employee must timely exhaust administrative remedies before bringing a Title VII claim in federal court. Franceschi v. U.S. Dept. of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008). Title VII requires a

person seeking remedy from employment discrimination to file a charge with the EEOC within 180 or 300 days after the "alleged unlawful employment practice occurred." Johnson v. University of Puerto Rico, 714 F.3d 48, 53 (1st Cir. 2013) (citation omitted). Puerto Rico is generally a "deferral" jurisdiction; therefore, the administrative charge must be filed within 300 days of the alleged unlawful conduct. Id. However, the EEOC has not conferred the Antidiscrimination Unit in Puerto Rico with jurisdiction to hear claims for retaliation under Title VII. See 42 U.S.C. § 2000e–3(a); see also Álvarez v. Delta Airlines, 319 F.Supp.2d 240, 249 (D.P.R. 2004). Therefore, a claimant will have 180 days, not 300 days, from the alleged unlawful employment practice to file a charge of retaliation under Title VII with the EEOC. 42 U.S.C. § 2000e–3(a).

Castro-Mendré first filed charges of sex discrimination and retaliation under Title VII with the EEOC on July 7, 2011. (Docket Nos. 73, 74.) She voluntarily dismissed the charge filed before the EEOC and the ADU on January 31, 2012. The charge was closed and dismissed with prejudice on February 6, 2012. Castro-Mendré filed anew on October 4, 2012. In this EEOC filing, the only one where she obtained a right to sue, Castro-Mendré lists the earliest act of alleged discrimination as having occurred on March 2, 2011, and the latest on May 20, 2012. Therefore, the allegations in her complaint predicated upon sexual harassment—including the emailed images or workplace kisses from López, all of which occurred in 2010—were more than one year in the past. As such, Castro-Mendré's sexual discrimination claim is time-barred.

**B.     Hostile Work Environment**

Title VII of the Civil Rights Act of 1964 prohibits, among other things, "the creation of a hostile work environment" on the basis of an employee's gender. Vance v. Ball State Univ., ––– U.S. –––, –––, 133 S.Ct. 2434, 2441 (2013). To establish a

violation of that prohibition, Castro-Mendré "must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." Id. She has not.

Sexual harassment may occur when the workplace is permeated with unwelcome intimidation, ridicule or insult that is so severe and pervasive that it alters the conditions of the victim's employment and creates an abusive working environment. See Rosario v. Dep't of the Army, 607 F.3d 241 (1st Cir. 2010); Quiles-Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006). In order to establish a prima-facie case of hostile work environment under Title VII, a plaintiff must establish: (1) that she is a member of a protected class; (2) that she was subject to unwelcome harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe and pervasive so as to alter the conditions of the plaintiff's employment and create an abusive working environment; (5) that the harassment affected a term, condition, or privilege of employment; and (6) that some basis for employer liability has been established. See Medina-Rivera v. MNM, Inc., 713 F.3d 132, 137 (1st Cir. 2007).

Because she sued her employers, not López, she must show that Humana was culpable—that it "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate action." Forrest v. Brinker Intern. Payroll Co., LP, 511 F.3d 225, 230 (1st Cir. 2007); Cf. Torres-Negron v. Merck & Company, Inc., 488 F.3d 34, 40 (1st Cir.2007) (if harasser is co-worker, employer is only liable if superior knew, or should have known, of harassment and failed to take prompt remedial action). No such conclusion could be made on this record. Humana took Castro-

Mendré's complaints seriously. After Castro-Mendré came forward, Humana's Human Resources Department and the Vice-President of the Providers Network and Contracting Department launched an immediate investigation. Humana brought in an outside consulting firm to evaluate the workplace environment after Castro-Mendré complained about a pervasive atmosphere of unprofessionalism, including inappropriate conversation and off-color jokes. After Humana concluded its investigation, and the outside consulting firm issued its report, Castro-Mendré did not complain again about workplace-related harassment.

It suffices for disposing of this claim then that Humana promptly began an internal investigation regarding Castro-Mendré's allegations and meted out sufficient disciplinary measures to those individuals found to have violated company policy. Castro-Mendré cannot establish a basis for employer liability.

**C.     Retaliation**

Title VII also prohibits an employer from retaliating against an employee because he opposed unlawful discrimination. Univ. of Texas Sw. Med. Ctr. v. Nassar, ⎯⎯ U.S. ⎯⎯, ⎯⎯, ⎯⎯, 133 S.Ct. 2517, 2522 (2013); 42 U.S.C. § 2000e–3(a). Castro-Mendré thinks that Humana did just that when it terminated her employment. To succeed, she must show that the defendants terminated her employment *because* of her opposition—"that the desire to retaliate was the but-for cause of [her termination]." Id. at 2528. She has not.

A Title VII claim for retaliation requires the plaintiff to show: (1) she engaged in protected conduct; (2) she suffered an adverse employment action; (3) there was a causal

Case 3:12-cv-01946-JAF   Document 122   Filed 06/10/14   Page 9 of 12

Civil No. 12-1946 (JAF)                                                                               -9-

connection between the protected activity and the adverse employment action. Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 24 (2014).

Castro-Mendré points to the timeline of events as evidence of causation. Taken together with other considerations, temporal proximity may indeed indicate causation. Collazo v. Bristol-Myers Swuibb Mfg., Inc, 617 F.3d 39, 50 (1st Cir. 2010). But the relevance of that factor dims as time passes between the alleged act of opposition and the alleged act of retaliation. See, e.g., Bennett v. Saint-Gobain Corp., 507 F.3d 23, 32 (1st Cir. 2007) (sixteen-month gap between protected activity and subsequent termination was insufficient to support a reasonable inference of causation).

In this instance, timing does not advance Castro-Mendré's cause. She first complained about sexual harassment in the winter of 2011, when she told Benítez about the pictures Lopéz sent. A year and three months passed before the defendants let her go on May 29, 2012. Action taken fifteen months later suggests no causality. See, e.g., Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 274 (2001) (per curiam) (holding that adverse action taken twenty months later suggests no causality); see also Bishop v. Bell Atl. Corp., 299 F.3d 53, 60 (1st Cir. 2002) (finding one-year gap between protected activity and adverse employment action insufficient to support a reasonable inference of causation).

Even if we found causation, if, as is true here, the employer gives a "legitimate, non-discriminatory reason" for its adverse action, the employee has the burden of showing that the explanation is pretextual. Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 26 (1st Cir. 2004). Castro-Mendré has not met that burden.

Case 3:12-cv-01946-JAF   Document 122   Filed 06/10/14   Page 10 of 12
Civil No. 12-1946 (JAF)                                                              -10-

Castro-Mendré claims that after she filed her complaint, Humana retaliated against her in the form of: A disciplinary memo she received after the outside consulting group's report cited a workplace marked by unprofessionalism; the reprimands she received from Ramírez for not doing her job correctly; the "cold shoulder" she received from her co-workers; and her eventual termination.

But Castro-Mendré received her written reprimand—along with five other Humana employees—based on the prompting of an outside consultant's findings. The consultant was brought in to evaluate the dynamic in Castro-Mendré's workplace based on the information she provided in her complaint. That an outside consultant found that Castro-Mendré was implicated in behavior similar to that which she claimed was unwelcome and offensive—including the use of profanity, telling off-color jokes at work, and teasing other employees—does not indicate that she was targeted by Humana for retaliation. In fact, it is evidence that she was not given special treatment in an investigation that resulted in reprimands for a group of employees, not for Castro-Mendré alone.

The written reprimands and progressive discipline Castro-Mendré received from Ramírez were based exclusively on performance reasons—maintaining agendas and work schedules in compliance with company policy; attending meetings punctually and prepared; and submitting official forms completed and on-time. Moreover, it is clear from the record that Ramírez, who started supervising Castro-Mendré after López's resignation, did not even know that Castro-Mendré had filed an internal complaint.

That Castro-Mendré believed her fellow employees to be cold or reluctant to socialize following her decision to file her complaint does not mean such behavior constitutes an adverse employment action. O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st 2001) (holding that conduct that results from the way men and women routinely interact in the workplace with members of the same or opposite sex does not violate Title VII); see also Brooks v. City of San Mateo, 229 F.3d 917, 929 (9th Cir. 2000) (holding that because an employer cannot force employees to socialize with one another, ostracism suffered at the hands of coworkers cannot constitute an adverse employment action); Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 969 (8th Cir. 1999)

Finally, Humana points out that Castro-Mendré was terminated because of company policy that requires the *immediate* termination of any employee who falsifies information submitted on company forms—a legitimate, non-discriminatory reason for the company's action and one that Castro-Mendré fails to rebut persuasively. Castro-Mendré falsified signatures, submitted incomplete or incorrectly filled-out forms, and claimed staff contacts that were no longer employed by the respective medical provider or did not exist in the first place. When notified about irregularities in submitted paperwork, several medical providers asked Humana to conduct an internal investigation. Given the absence of evidence establishing a causal connection between the protected conduct and discharge, Castro-Mendré's claim of retaliation fails.

**D.      Commonwealth Claims**

Finally, Castro-Mendré alleges violations of rights afforded by the Puerto Rico Civil Code. (Docket No. 23 at 15-9.) Specifically, Castro-Mendré alleges violations of Law 100, 115, and Articles 1802 and 1803 of the Puerto Rico Civil Code. (Id.)

We have discretion to decline supplemental jurisdiction over the remaining Commonwealth law claims, since we have dismissed all of the claims over which we have original jurisdiction. See 28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("if the federal law claims are dismissed before trial … the state claims should be dismissed as well). In exercising our discretion under § 1367(c), we must consider the issues of "judicial economy, convenience, fairness, and comity." Che v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 37 (1st Cir. 2003). Having considered these factors, we decline to exercise supplemental jurisdiction over Castro-Mendré's Commonwealth law claims, and we dismiss them without prejudice.

**IV.**

**Conclusion**

For the foregoing reasons, Defendants' summary judgment motion, (Docket No. 62), is **GRANTED.** The plaintiff's federal law claims are **DISMISSED WITH PREJUDICE**. The plaintiff's Commonwealth law claims are **DISMISSED WITHOUT PREJUDICE.** The plaintiff's motion to dismiss her claim for defamation without costs is **GRANTED**. (Docket No. 72 at 15.).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 10th day of June, 2014.

                                                                            S/José Antonio Fusté
                                                                            JOSE ANTONIO FUSTE
                                                                            U. S. DISTRICT JUDGE